## 17876. CALVERT *v.* ATLANTA HUB COMPANY INCORPORATED.

1. "A master is liable for the wilful torts of his servant, committed in the course of the servant's employment, just as though the master had himself committed them." *Central of Ga. Ry. Co.* v. *Brown,* 113 *Ga.* 414 (38 S. E. 989, 84 Am. St. R. 250). A different rule obtains as to torts committed by independent contractors. "The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer." Civil Code (1910), § 4414.

2. One operating a collection agency whereby he undertakes the collection of debts on a commission, and whose services are in no wise subject to the employer's control or orders as to the time, manner, or method of their execution, does not occupy the status of a servant, but must be taken as exercising an independent business. Where one contracts with an individual thus exercising an independent business, for him to do a work not in itself unlawful or attended with danger to others, the employer is not liable for the wrongful or negligent acts of the independent contractor or his servants. *Quinan* v. *Standard Fuel Co.,* 25 *Ga. App.* 47 (102 S. E. 543); *Zurich General Accident &c. Co.* v. *Lee,* 36 *Ga. App.* 248 (136 S. E. 173); Civil Code (1910), § 4414.

3. The facts of the instant case show no such ratification of the alleged tort by the defendant as would render it liable under sections 4415 and 4416 of the Civil Code of 1910. The court did not err in granting a nonsuit.

DECIDED OCTOBER 15, 1927.

Action for damages; from city court of Atlanta—Judge Dorsey. November 22, 1926.

Mrs. Calvert sued Atlanta Hub Company for an alleged illegal and unauthorized arrest by one Kelley, who, she charged, was the

---

Master and Servant, 39 C. J. p. 1292, n. 72; p. 1315, n. 1; p. 1324, n. 11; p. 1340, n. 70.

agent of the defendant for the purpose of collecting a certain account due by her to the defendant, and that in making such illegal arrest and in otherwise mistreating her, he was acting within the scope of his employment with the defendant. The proof shows, according to the testimony of Carson, the general manager of the defendant company, who was introduced as a witness by and for the plaintiff, that Kelley had at one time been employed by the defendant as a collector, but that this relation was severed several months prior to the occasion on which, the plaintiff contends, Kelley illegally arrested her; that after he ceased to be an employee of the defendant, Kelley solicited from the defendant accounts for collection, Carson testifying, without objection, that Kelley then represented himself as operating a collection agency; that the plaintiff's account of $40, along with other accounts, was turned over to Kelley by the defendant for collection on a commission basis, Kelley to receive fifty per cent. of the amount collected, and to receive nothing if no collection was made; that the defendant reserved no control over the manner or method by which Kelley undertook to make collection, and gave him no instructions with reference thereto. The plaintiff testified, that Kelley called upon her at her place of business and demanded payment of the account, telling her that he was an officer of the law and would place her under arrest unless she paid the account; that when the plaintiff informed Kelley that she did not have the money with which to pay the account, he told her to "consider herself under arrest," showing her some sort of badge, and took her by the arm and carried her out of her place of business. He then escorted her to the place of business of an acquaintance of hers, who furnished the money to pay off the account, whereupon Kelley gave her a receipt for $40, the amount paid, and released her. The acquaintance, Rose, who had furnished Mrs. Calvert with the necessary money to pay the account, testified: "I went down to the Hub Style store on May 19, 1925, and got a receipt;" "I asked Mr. Carson to give me a receipt showing that the bill was paid in full; he gave me the receipt;" witness informed Carson, in Kelley's presence, of what had occurred; "Kelley was there when I went in;" Carson "at first did not seem to understand what I was talking about." The evidence of Rose does not indicate that he asked for the return of the money

paid; it appears that he merely asked that a receipt therefor be given him, and that this request was complied with. He testified that Carson did not say anything about whether Kelley was the defendant's agent or not; that he did not say he was the defendant's agent, and did not say he was not. There is nothing in Rose's testimony to indicate that any inquiry was made of Carson as to what the relationship existing between the defendant and Kelley was, or that such a question was raised. Carson, the general manager, testified, with reference to this interview, that when Rose called on him he asked if there would be any further trouble about the account; that he told Rose he did not know there had been any trouble; that Rose asked if Carson would give him a receipt, so it would show that the debt was paid, stating that he did not want any further costs to it, to which Carson replied that there had not been any costs; and that he thereupon gave Rose the receipt requested. Carson testified that at the time Kelley delivered the $20 collected from the plaintiff he had no knowledge of the tort alleged to have been committed by Kelley, as mentioned by Rose. So far as the record shows, there is nothing to indicate either that Rose was authorized, or that he represented himself to be authorized, to act as agent of the plaintiff in the interview had with Carson. On the contrary, so far as the evidence indicates, he merely advanced a portion of the money for the plaintiff, in the absence of his secretary, who was away at the time Mrs. Calvert called to see the secretary; and, so far as his testimony shows, he followed up this action by going to Carson, on his own responsibility, and taking from him a receipt for the money signed by the firm, in order to make sure that the money advanced by him and paid by Mrs. Calvert would go in full extinguishment of the debt.

At the conclusion of the evidence for the plaintiff, upon motion of the defendant, the court granted a nonsuit.

*Cecil V. Whiddon, Thomas H. Goodwin, Taylor Smith,* for plaintiff.

*Branch & Howard,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) The principles of law set forth in the first and second divisions of the syllabus require no elaboration.

While it is true that where one is employed as an independent

contractor to render services on behalf of another, the employer becomes liable for the tort of the independent contractor in carrying out the purposes of the contract if he ratifies the unauthorized *wrong* (Civil Code of 1910, §§ 4415 (6), 4416), still the ratification must relate to the wrong itself, and not merely to the authority of the independent contractor to act as such for the employer. Accordingly, the mere acceptance by the employer of the benefits naturally flowing from the proper performance by the·independent contractor of his contract, and the retention of such benefits after knowledge that such contractor, in the performance of the contract, committed an independent tort, will not amount to ratification by the employer of the tort itself. Where, as in the instant case, the object of the contract was the collection of a debt owing to the employer, the acceptance by the employer from the independent contractor of the amount collected, which was no greater than the amount admittedly due him, and the retention of that amount after knowledge of the unauthorized tort committed by the contractor in making the collection, would not amount to a ratification of such unauthorized wrong. If, after ascertaining the commission of the tort of the independent contractor, the defendant was entitled to retain the proceeds of the collection on the theory that the amount collected represented an amount admittedly due the defendant by the plaintiff, and if the defendant could not be required to pay back the amount thus re-received, its right to retain it establishes the fact that the defendant received and held the funds solely by virtue of its admitted claim of indebtedness, and not because of the tort committed, and that such retention could not, therefore, amount to a ratification of the tort, but amounted only to an affirmation of the contractor's authority, as such independent contractor, to receive such sum for his employer.

The purport of the testimony of the plaintiff's witness, Rose, is to the effect that Carson was not asked, and that nothing was then said by him one way or the other, as·to whether the relationship then existing between the defendant and the collector was that of master and servant or employer and independent contractor; that is, while it appears that some sort of relationship was understood to exist between the defendant and the collector, its nature and character was not raised or brought into question.

While it was not contended by counsel for the plaintiff in error that a failure on the part of the manager to voluntarily inform the witness Rose of the exact nature and character of the collector's employment amounted to such an admission by silence as would tend to discredit Carson's undisputed testimony on the trial that the collector was in fact an independent contractor, we think it proper to say that, accepting Rose's testimony as true, the failure of the manager to raise and discuss with this witness the nature and legal effect of the contract of employment, when no such matter or question had been suggested or brought to his attention, could not be taken as discrediting his undisputed testimony on the trial. Rose's testimony shows that he "went down to the Hub Style Store on May 19, 1925, and got a receipt." The purport of this testimony is that he went down to interview Carson not for the purpose of entering a claim for damages against the Hub Company, but in order to ascertain if Kelley had turned over the money, and, if so, to obtain a receipt from the Hub Company in lieu of the one signed by Kelley. His testimony in no wise indicates that the responsibility of the Hub Company for the conduct of Kelley was in any way broached, and there is nothing to suggest that the defendant's manager could then have supposed that the plaintiff intended to hold the defendant company liable for Kelley's acts and conduct. This being true, there was no duty upon the defendant to presuppose a claim for liability in no wise intimated, and to disclaim responsibility for the acts of its independent contractor.

*Judgment affirmed. Bell, J., concurs. Stephens, J., dissents.*